NOT DESIGNATED FOR PUBLICATION

No. 119,624

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FSST FINANCIAL SERVICES, LLC,
*Appellee*,

v.

NATIVE PAYMENT SERVICES, LLC,
FOXBARRY FINANCIAL SERVICES, LLC, and
BARRY J. BRAUTMAN,
*Appellants*.


MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed March 20, 2020. Affirmed.

*Donald M. McLean*, of Kansas City, for appellants.

*Brian Nye* and *Paul Croker*, of Armstrong Teasdale LLP, of Kansas City, Missouri, for appellee.

Before BUSER, P.J., PIERRON and BRUNS, JJ.


BUSER, J.:  FSST Financial Services, LLC (FSST) filed a lawsuit against Native Payment Services, LLC (Native), Foxbarry Financial Services, LLC (Foxbarry), and Barry J. Brautman (collectively Defendants). In its petition, FSST brought several claims against Defendants and argued they improperly withheld $404,462.11 that belonged to FSST. After Defendants failed to respond to the petition, the district court granted default judgments against them. More than eight months after the district court granted default judgment against the last defendant, Defendants moved to set aside the judgments. The district court denied the motion.

1

Defendants appeal the district court's order denying their motion to set aside the default judgments. On appeal, Brautman argues the court abused its discretion by denying his request to set aside the default judgment under K.S.A. 2018 Supp. 60-260(b)(1) because he proved excusable neglect. Next, Defendants collectively contend the district court abused its discretion when it refused to set aside the judgments under K.S.A. 2018 Supp. 60-260(b)(6) because the court relied on incorrect legal standards.

Upon our review, we find no reversible error and affirm the district court's denial of Defendants' motion to set aside the default judgments.

FACTUAL AND PROCEDURAL BACKGROUND

On August 15, 2016, FSST filed an eight-count petition against Defendants. The petition alleged breach of contract, negligent/fraudulent misrepresentation, breach of fiduciary duty, unjust enrichment, civil theft/fraudulent conversion/conversion, conspiracy, and a request for an accounting. The petition named Native, Foxbarry, and Brautman individually as defendants in the action.

In its petition, FSST alleged that it entered into a consulting agreement with Foxbarry—a company directed and controlled by Brautman. Through this consulting agreement, Brautman and Foxbarry brokered a deal between FSST and Native for Native to process FSST's electronic financial transactions. Brautman is named as the president and managing member of Native. FSST and Native entered into a contract requiring Native to provide FSST with payment services to process the electronic credits and debits of FSST's customers.

The petition asserted that Native processed credit transactions and held funds on behalf of FSST, but failed to pay FSST. As a result, Native breached its contract and improperly withheld $404,462.11 from FSST. FSST terminated the financial processing

2

contract with Native and demanded immediate return of the withheld funds. Native, however, refused to pay FSST the $404,462.11. In its petition, FSST pled that Brautman was the alter ego of Native.

In addition to Native's wrongdoings, FSST asserted that Brautman and Foxbarry breached the consulting agreement. According to FSST, Brautman and Foxbarry knew or should have known that Native should not be trusted with providing financial processing services, but failed to inform FSST of that fact. FSST informed Brautman and Foxbarry of their collective breach of the consulting agreement and demanded payment of the $404,462.11 withheld by Native. Like Native, Brautman and Foxbarry failed to pay the $404,462.11 owed to FSST.

FSST served all three defendants. Brautman was served in October 2016. Native and Foxbarry were served in January 2017.

On October 31, 2016, Brautman filed pro se a clerk's order for additional time to plead to the petition. This order provided:

> "Now, on this 31st day of October, 2016 defendant(s) Barry Brautman (write in name) is/are hereby granted (14) additional days within which to answer or file other pleading to the plaintiff's petition."

However, Brautman failed to answer or file any responsive pleading by the extended deadline of November 14, 2016.

On December 6, 2016, FSST moved for default judgment against Brautman. In this motion, FSST requested a damages award of $404,462.11 plus interest, costs, and attorney fees. FSST served a copy of this motion and a notice of a hearing on Brautman. But Brautman failed to respond to FSST's motion for default judgment or appear at the

hearing. At the conclusion of the hearing, the district court granted FSST's motion for default judgment against Brautman.

On January 10, 2017, the district court filed a journal entry of default judgment awarding FSST damages of $404,462.11 plus interest, costs, and $5,000 in attorney fees. About two months after the district court entered default judgment against Brautman, he filed for bankruptcy. However, Brautman's bankruptcy action was later dismissed.

Like Brautman, both Native and Foxbarry failed to file responsive pleadings after they were served with FSST's petition. FSST moved for default judgment against Native on February 21, 2017, and against Foxbarry on March 15, 2017. A hearing on the two motions was held on April 18, 2017. Although FSST's attorney attended, Defendants failed to appear. After the hearing, the district court granted FSST's motions and entered default judgments against both Native and Foxbarry.

On January 5, 2018, Defendants moved to set aside the default judgments. In this motion, Brautman argued the default judgment against him should be set aside under K.S.A. 60-260(b)(1) because he had multiple pending legal matters and had no financial means to defend the current lawsuit. The motion continued:

> "Defendant Brautman believed (and still believes) he had a meritorious defense to the claims made against him in the petition and so he obtained information from the clerk of the court seeking additional time to respond to Plaintiff's Petition. . . . Further, Defendant Brautman mistakenly believed that this would not affect his ability to file for a bankruptcy potentially resolving this issue in the [least] expensive means possible at the time."

Defendants' motion also alleged the district court should set aside the default judgments on all three defendants under K.S.A. 60-260(b)(6) for several reasons which will be addressed later in this opinion.

4

FSST responded to Defendants' motion, arguing that Brautman consciously ignored the lawsuit and failed to describe any meritorious defense. FSST suggested that Brautman's failure to include FSST in his bankruptcy petition's list of creditors undercut the credibility of Brautman's claim that his bankruptcy action would resolve his problems in this litigation. FSST also claimed this admission by Brautman showed: "1) a recognition of the proceedings against him in this matter and 2) a conscious decision on his part to disregard this lawsuit because he believed it would be discharged in bankruptcy."

A hearing was held on Defendants' motion to set aside judgment. Despite his attorney's request that he personally appear, Brautman failed to attend the hearing. In discussing Brautman's failure to appear, the district court stated "[Brautman] knew about it, [he] didn't show up, which is real similar to the default hearing." Brautman's attorney argued the motion.

At the hearing, Brautman's attorney contended that the default judgment should be set aside under K.S.A. 60-260(b)(1) because Brautman mistakenly believed the lawsuit was only against Native and Foxbarry and not necessarily against him individually. Brautman's attorney claimed his failure to include FSST in his bankruptcy petition's list of creditors demonstrated his belief that he was not an individual defendant in the lawsuit.

All three defendants at the hearing asserted that the default judgments should be set aside under K.S.A. 60-260(b)(6). Brautman's attorney claimed he had a meritorious defense because he was not a party to the contracts signed between FSST and Native or FSST and Foxbarry. Native and Foxbarry alleged they had meritorious counterclaims against FSST that would be included in a responsive pleading. At the conclusion of the hearing, the district court took the matter under advisement but ordered Brautman to file an affidavit explaining his actions and inactions in the case.

5

After Brautman filed an affidavit, the district court denied Defendants' motion to set aside the default judgments. The district court found that Defendants failed to show excusable neglect or present a meritorious defense. The district court ruled that Brautman's claim of excusable neglect failed, in part, because personal service and his requested extension to answer made it "highly unlikely" that Brautman was unaware he was a defendant in the lawsuit. Instead, the district court noted that "it seems that Brautman either thought that if he ignored the lawsuit, it would go away, or that he could discharge any judgment in bankruptcy." Turning to Defendants' claimed defenses, the district court ruled that Defendants' "'meritorious defenses' are general denials of the claims against [them], without any corresponding evidence to lend force to those denials."

Defendants appeal.

ANALYSIS

On appeal, Defendants contend the district court erred by denying their motion to set aside the default judgments. Brautman argues that the default judgment should be set aside under K.S.A. 2018 Supp. 60-260(b)(1) because he established excusable neglect. For their part, Defendants collectively argue that the district court abused its discretion by failing to set aside the default judgments under K.S.A. 2018 Supp. 60-260(b)(6).

*Standards of Review*

The decision to set aside a default judgment rests in the discretion of the district court and will not be disturbed on appeal without a showing of abuse of discretion. *Garcia v. Ball*, 303 Kan. 560, 565-66, 363 P.3d 399 (2015). Judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. 303 Kan. at

6

566. An abuse of discretion occurs if discretion is guided by an erroneous legal conclusion or goes outside the framework of or fails to consider proper statutory limitations or legal standards. See *Matson v. Kansas Dept. of Corrections,* 301 Kan. 654, 656, 346 P.3d 327 (2015).

*Standards for Setting Aside Default Judgments*

Under K.S.A. 2018 Supp. 60-255(b), a district court may set aside a default judgment for any of the grounds listed in K.S.A. 2018 Supp. 60-260(b). A district court may relieve a party from a final judgment under K.S.A. 2018 Supp. 60-260(b)(1) upon a showing of "[m]istake, inadvertence, surprise or excusable neglect." K.S.A. 2018 Supp. 60-260(b)(6) is also a catch-all provision, permitting a district court to set aside a judgment for "any other reason that justifies relief."

"Default judgments are not favored by the law but are necessary when the inaction of one party frustrates the administration of justice." *First Management v. Topeka Investment Group*, 47 Kan. App. 2d 233, 239, 277 P.3d 1150 (2012). When determining whether to set aside a default judgment, courts should resolve any doubt in favor of setting the judgment aside so cases may be decided on their merits. Of note, Kansas law disfavors default judgments in matters that involve large sums of money. *Garcia*, 303 Kan. at 568.

*Brautman's Argument to Set Aside the Default Judgment Under K.S.A. 2018 Supp. 60-260(b)(1)*

Brautman contends the district court erred when it denied his motion to set aside the default judgment based on excusable neglect under subsection (b)(1) of K.S.A. 2018 Supp. 60-260. According to Brautman, he established excusable neglect by his affidavit which alleged: (1) He did not believe the lawsuit was against him individually; (2) he

was in financial distress and unable to pay an attorney; and (3) he did not understand how to defend the action given the complexity of the issues and his unfamiliarity with the law.

The district court ruled that Brautman failed to prove excusable neglect. The district court explained:

> "His claim for excusable neglect fails because Brautman admitted service and even filed for an extension to answer. Brautman clearly knew enough about the litigation process to file the extension without the help of an attorney. Thus, it is unlikely that Brautman was unaware of the consequences of failing to respond. Brautman also alleges that he was unaware that he was a defendant and that he thought the lawsuit was only against the corporate defendants. Once again, service and his requested extension make this highly unlikely. Brautman claims financial distress, but never informed the court of that distress prior to the default judgment. Rather, it seems that Brautman either thought that if he ignored the lawsuit, it would go away, or that he could discharge any judgment in bankruptcy. Brautman cannot demonstrate mistake or excusable neglect, and this is fatal to his motion to set aside a default judgment."

The phrase "excusable neglect" in K.S.A. 2018 Supp. 60-260(b)(1) is not clearly defined. But inexcusable neglect is similar to reckless indifference and implies "something more than the unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind." *Jenkins v. Arnold*, 223 Kan. 298, 299, 573 P.2d 1013 (1978). What constitutes excusable neglect under subsection (b)(1) should be determined on a case-by-case basis given the particular facts presented. 223 Kan. at 299.

The district court did not abuse its discretion in finding that Brautman failed to show excusable neglect. Brautman concedes he was served with FSST's petition and failed to file any responsive pleading. He was aware of the claims against him because he filed an extension to respond without the assistance of an attorney. Although he knew of the claims, Brautman presented no evidence of any actions he took to respond to the

8

petition, the motion for default judgment, or the entry of the default judgment for almost a year after the judgment was entered against him. While Brautman claims he did not understand how to proceed with defending the lawsuit, "confusion related to proceedings does not qualify as excusable neglect." *Morton County Hospital v. Howell*, 51 Kan. App. 2d 1103, 1113, 361 P.3d 515 (2015).

Brautman's assertions that he was unable to pay an attorney and was unfamiliar with the law also fail to establish excusable neglect. Even a pro se litigant has a legal duty to act to protect his or her interests. 51 Kan. App. 2d at 1113. Moreover, ignorance of the rules does not constitute excusable neglect under subsection (b)(1). *State v. Davisson*, 303 Kan. 1062, 1069, 370 P.3d 423 (2016). Given Brautman's inaction and initial arguments for setting aside the judgment, the district court appropriately found that Brautman ignored the lawsuit in hopes it would disappear or that any judgment could be discharged in bankruptcy.

The district court also rejected Brautman's allegation that he was unaware the lawsuit was filed against him individually. Generally, our court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *Geer v. Eby*, 309 Kan. 182, 191, 432 P.3d 1001 (2019). That said, when the controlling facts are based on written or documentary evidence through pleadings, admissions, depositions, and stipulations, our court may determine de novo what the facts establish. *O'Neill v. Herrington*, 49 Kan. App. 2d 896, 902, 317 P.3d 139 (2014). Like the district court, we discount Brautman's assertion that he was unaware the lawsuit was against him individually.

The procedural history of this case demonstrates that Brautman knew the lawsuit was filed against him as an individual. He was served in October 2016. More than two months before the other defendants were served, Brautman appeared individually to request a clerk's extension of time. He wrote his name on the submission, made no

9

reference to any other defendant, provided his personal address, and signed the document. Additionally, before the other defendants were served, FSST moved for default judgment against Brautman individually and the district court entered the default judgment against him.

Another reason bolsters the district court's ruling. When the Defendants moved to set aside the default judgments, Brautman argued that excusable neglect existed because he believed his personal bankruptcy would resolve the matter. But FSST pointed out that Brautman could not reasonably have believed that his bankruptcy would resolve the litigation because he failed to include FSST as a creditor. In response, Brautman inconsistently asserted that he did not disclose the default judgment in his bankruptcy proceeding because he did not believe this litigation was against him individually. Brautman's actions associated with his obtaining a clerk's extension to respond to the lawsuit, coupled with his inconsistent arguments, support the district court's conclusion that he did, in fact, know that FSST's lawsuit was filed against him as an individual.

Lastly, assuming Brautman, in fact, failed to recognize the significance of being named individually in the lawsuit, the district court did not err by ruling that this reason did not constitute excusable neglect. See *First Nat'l Bank in Belleville v. Sankey Motors, Inc.*, 41 Kan. App. 2d 629, 635, 204 P.3d 1167 (2009) (affirming finding of no excusable neglect when petition requested money judgment but debtor mistakenly identified the claim as a foreclosure action and chose not to file a responsive pleading).

In summary, the district court did not abuse its discretion in finding that Brautman failed to establish excusable neglect and in denying his request to set aside the default judgment under K.S.A. 60-260(b)(1).

*Defendants' Argument to Set Aside the Default Judgments Under K.S.A. 2018 Supp. 60-260(b)(6)*

Defendants collectively contend the district court abused its discretion by failing to apply the proper legal standards to evaluate their motion to set aside judgment under subsection (b)(6) of K.S.A. 2018 Supp. 60-260. According to the Defendants, when evaluated under the correct legal standards, they established reasons justifying relief under the catch-all provision of subsection (b)(6).

When outlining the legal standards that apply to motions to set aside a default judgment, the district judge stated:

> "A motion to set aside default judgment may be granted whenever the court finds: (a) that the non-defaulting party will not be prejudiced by the reopening; (b) that the defaulting party has a meritorious defense; and (c) that the default was not the result of inexcusable neglect or a willful act. This must be done by clear and convincing evidence. Failure to demonstrate even one of these factors is fatal to a motion to set aside. [Citations omitted.]"

In applying these legal standards, the district court did not specifically separate Defendants' subsection (b)(1) and subsection (b)(6) claims. Instead, the district court combined the analysis and denied the motion to set aside the default judgments for the reasons that the Defendants failed to show excusable neglect or meritorious defenses.

Defendants assert the district court erred as a matter of law by applying these legal standards when denying their motion to set aside judgment under subsection (b)(6). Specifically, Defendants claim these legal standards were improper because they (1) required a finding of no inexcusable neglect and (2) imposed a clear and convincing evidence standard of proof. FSST responds that the district court applied these standards only on Defendants' subsection (b)(1) claims and not the subsection (b)(6) claims.

11

Upon our review, the district court appears to have applied the complained-of legal standards to all Defendants' grounds to set aside the default judgments, including the Defendants' arguments under subsection (b)(6). After finding that Defendants failed to show excusable neglect, the district court explained this finding "is fatal to [their] motion to set aside judgment." This suggests the district court required a finding of no inexcusable neglect as to all Defendants' grounds to set aside the default judgments, not only Defendants' subsection (b)(1) claims. Moreover, the district court did not distinguish between the different standards applicable to Defendants' various grounds to set aside the judgments. As a result, we are persuaded that the district court applied the complained-of legal standards to Defendants' arguments under subsection (b)(6).

As Defendants complain, subsection (b)(6) does not require a party to show no inexcusable neglect. Initially, in *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, Syl. ¶ 4, 523 P.2d 351 (1974), our Supreme Court held:

> "A motion to set aside a default may be granted whenever the court finds (1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) *that the default was not the result of inexcusable neglect or a willful act*." (Emphasis added.)

These three considerations listed in *Montez* for setting aside default judgments are called the *Montez* factors.

More recently, however, our Supreme Court in *Garcia* addressed how the *Montez* factors affect a motion made under the catch-all provision of subsection (b)(6). Before *Garcia*, Kansas courts often treated the *Montez* factors as elements a movant needed to prove in any action to set aside a default judgment. See, e.g., *Sankey Motors, Inc.*, 41 Kan. App. 2d at 634. But the *Garcia* court clarified that proving no inexcusable neglect

12

was not a requirement to obtain relief under subsection (b)(6). *Garcia*, 303 Kan. at 569-70.

Like Defendants here, the defendant in *Garcia* sought to set aside a default judgment under subsections (b)(1) and (b)(6). The *Garcia* court held that, since relief under subsection (b)(1) is based on excusable neglect, a party need not establish excusable neglect to obtain relief under subsection (b)(6) because that requirement would always render subsection (b)(6) superfluous. 303 Kan. at 569. The court distinguished *Montez*, finding *Montez* involved only excusable neglect and inadvertence. *Garcia*, 303 Kan. at 569. The court then emphasized:

> "In that vein, the *Montez* factors should be considered viable benchmarks for judicial
> discretion in determining whether relief from a default judgment is warranted under
> K.S.A. 60-260(b) but should not be rigidly adhered to when determining the existence of
> 'any other reason justifying relief' pursuant to K.S.A. 60-260(b)(6)." 303 Kan. at 570.

In the present case, while the district court discussed the *Montez* factors in its evaluation of the Defendants' (b)(6) claim, as discussed later, we do not consider that the district court "rigidly adhered" to the third *Montez* factor in making its ruling.

Next, we consider the Defendants' objection to the district court's mention that clear and convincing proof was necessary to set aside a default judgment. Whether a clear and convincing evidence standard is the appropriate burden of proof presents a murkier question in Kansas law. Our court has previously noted the tension in Kansas law regarding the movant's burden of proof to set aside a default judgment. *In re Marriage of Mullokandova & Kikirov*, No. 108,601, 2013 WL 5422358, at *3 (Kan. App. 2013) (unpublished opinion). Both our court and the Kansas Supreme Court have stated that the grounds for a motion under K.S.A. 60-260(b) must be proven by clear and convincing evidence. *State ex rel. Stovall v. Alivio*, 275 Kan. 169, 173, 61 P.3d 687 (2003); *First*

13

*Management*, 47 Kan. App. 2d at 239. In particular, our Supreme Court has found that a movant must prove by clear and convincing evidence that judgment should be set aside under subsection (b)(6). *In re Marriage of Zodrow*, 240 Kan. 65, 68, 727 P.2d 435 (1986).

Although Kansas courts previously have required clear and convincing evidence to set aside default judgments, our court in *In re Marriage of Mullokandova* questioned the basis for imposing a clear and convincing evidence standard. The *In re Marriage of Mullokandova* court traced the requirement of clear and convincing evidence standard to *Lee v. Brown*, 210 Kan. 168, 170, 499 P.2d 1076 (1972), and explained:

> "In [*Lee*], the Kansas Supreme Court stated that the grounds for a motion under K.S.A. 60-260(b) must be proven by clear and convincing evidence and cited generally *Cool v. Cool*, 203 Kan. 749, 457 P.2d 60 (1969). But *Cool* dealt with relief under K.S.A. 60-260(b)(3) based on fraud. Fraud typically must be proven by clear and convincing evidence, and K.S.A. 60-260(b)(3) is no exception. Nonetheless, the overly broad generalization in *Lee* has crept into Kansas caselaw. [Citations omitted.]" *In re Marriage of Mullokandova*, 2013 WL 5422358, at *3.

After this court questioned imposing a clear and convincing evidence standard in *In re Marriage of Mullokandova*, our Supreme Court issued *Garcia*, which reiterated that any doubts in analyzing a motion to set aside a judgment should be resolved in the movant's favor. The *Garcia* court also found that "K.S.A. 60-260(b)(6) 'is to be liberally construed to preserve the delicate balance between the conflicting principles that litigation be brought to an end and that justice be done in light of all the facts.'" 303 Kan. at 570 (quoting *In re Estate of Newland*, 240 Kan. 249, 260, 730 P.2d 351 [1986]). These standards for a motion to set aside are arguably less onerous than the clear and convincing evidence standard. See *In re Marriage of Mullokandova*, 2013 WL 5422358, at *3. The *Garcia* court also failed to mention such an elevated standard on the movant.

14

It should be noted that the district court never specifically stated that it required the Defendants to meet a clear and convincing standard of proof. Instead, it simply mentioned the standard as part of a brief summary of Kansas laws regarding motions to set aside default judgments. Like the court in *In re Marriage of Mullokandova*, however, we assume without deciding that the usual civil standard of a preponderance of the evidence is appropriate in evaluating whether to set aside a default judgment.

Assuming the district court applied incorrect legal standards, we next consider whether this error is harmless. See K.S.A. 2018 Supp. 60-261 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); K.S.A. 60-2105; cf. *State v. Ultreras*, 296 Kan. 828, 845, 295 P.3d 1020 (2013) ("[T]he application of an erroneous standard and burden of proof when ruling on a motion to dismiss that is based on a claim of immunity may be harmless error."). Because any error relates to the application of a statutory right, we must be persuaded that there is no reasonable probability that the error affected the outcome of the district court's order given the entire record for it to be considered harmless. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

We are persuaded there is no reasonable probability that the error affected the outcome of the district court's order. Additionally, reasonable persons could agree with the district court's decision to deny Defendants' motion to set aside the default judgments.

Here, the district court recognized that Kansas law disfavors default judgments in matters that involve large sums of money. The district court also specifically cited to the *Garcia* decision, wherein the Kansas Supreme Court affirmed the trial court's ruling to set aside a default judgment when the movant had meritorious defenses. The district court, however, spent considerable time distinguishing *Garcia* and concluded:

"The Court recognizes that $404,462.11 plus interest and costs is a large sum of money; however . . . this large sum does not outweigh [Defendants'] failure to demonstrate excusable neglect or meritorious defenses. . . . [Defendants'] inaction has frustrated the administration of justice, and although courts disfavor default judgments, the circumstances in this case are such that a default judgment is merited."

K.S.A. 2018 Supp. 60-260(b)(6) allows a district court to set aside a default judgment for any reason that justifies relief. Again, the *Montez* factors are "viable benchmarks for judicial discretion" when deciding motions to set aside judgments, but they should not be rigidly adhered to when determining whether any reason justifies relief under subsection (b)(6). *Garcia*, 303 Kan. at 570.

As the district court recognized, the factual circumstances in this case differ from those in *Garcia*. In *Garcia*, one month after the district court granted default judgment, the defendant moved to set aside the judgment arguing that the statute of limitations had run and the plaintiff had failed to state a claim for relief. The district court granted the defendant's motion because the law dislikes default judgments and the defendant had meritorious defenses. The *Garcia* court held that the district court did not abuse its discretion in granting the defendant's motion to set aside the default judgment under subsection (b)(6). 303 Kan. at 571. Our Supreme Court found that the district court's judgment was reasonable, in part, because of "the factual circumstance that [the defendant] had a meritorious defense" which was readily discernable from the plaintiff's petition. 303 Kan. at 568.

Unlike the one-month period in *Garcia*, Defendants in this case waited significantly longer before moving to set aside the default judgments. Brautman waited 360 days before moving to set the judgment aside. Native and Foxbarry waited over eight months before seeking relief. After Defendants moved to set aside the default judgments, they failed to personally appear at the hearing on their motion. This caused additional obstacles and delays because an affidavit by Brautman was needed in lieu of Defendants'

16

anticipated testimony. These actions and inactions supported the district court's finding that Defendants frustrated the administration of justice.

The district court also found that the Defendants failed to demonstrate any meritorious defenses. In this regard, movants must do more than just allege they have a meritorious defense, instead they must *demonstrate* a meritorious defense or impaired interest. *AkesoGenX Corp. v. Zavala*, 55 Kan. App. 2d 22, 48-49, 407 P.3d 246 (2017), *rev. denied* 308 Kan. 1593 (2018). In *AkesoGenX*—a case the district court heavily relied on—our court rejected the movant's meritorious defense claims because he failed to present evidence that the plaintiff's claims of breach of fiduciary duty and conversion were false. The *AkesoGenX* court then affirmed the district court's denial of the motion to set aside the default judgment, noting that the movant failed to explain why he had a meritorious defense, and finding that he admitted he was simply ignoring the lawsuit, hoping it would go away. 55 Kan. App. 2d at 49.

As the district court in this case found, most of Defendants' defenses were general denials or alleged counterclaims with no corresponding evidence proffered to support the assertions. Moreover, unlike *Garcia*, no defenses are evident from the petition filed by FSST. Although Brautman argues he did not sign the contracts in his individual capacity, he does not explain how this defense absolves him of liability on the several claims not based in contract. Additionally, other than suggesting that piercing the corporate veil is difficult, Brautman provided no defense to FSST's alter ego claims. As in *AkesoGenX*, Defendants proffered no evidence or otherwise demonstrated they had a meritorious defenses.

While courts do not favor default judgments, using the *Montez* factors as viable benchmarks, we cannot say the district court committed reversible error by denying the Defendants' motion to set aside the default judgments.

17

We also find there is no reasonable probability that the claimed use of incorrect legal standards affected the outcome of the district court's order. As discussed earlier, the district court heavily relied on the analysis in *AkesoGenX*—a case relying on the law in *Garcia*—while carefully justifying why the two cases required different outcomes. Upon our consideration of the entire record, we conclude any error by the district court was harmless.

Affirmed.